IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SHRONDA L. ROBEY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:14-CV-29 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Shronda Robey ("Robey") challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Robey alleges that the ALJ erred on multiple grounds, each of which are addressed below. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. No. 23), and **DENY** Robey's Motion for Summary Judgment. Dkt. No. 18.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Robey failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant

---
[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his

1

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Robey filed for SSI and DIB on April 18, 2012, claiming that her disability began on March 31, 2011. R. 179–194. The Commissioner denied the applications at the initial and reconsideration levels of administrative review. R. 55–71, 73–93. On February 11, 2014, ALJ Brian P. Kilbane held a video hearing to consider Robey's disability claim. R. 29–54. Robey was represented by an attorney at the hearing, which included testimony from vocational expert Andrew Beale. Id.

On February 27, 2014, the ALJ entered his decision analyzing Robey's claim under the familiar five-step process,[2] and denying Robey's claim for disability. R. 14–28. The ALJ found that Robey suffered from the severe impairments of affective disorder, anxiety disorder and substance addiction disorder. R. 16. The ALJ further found that Robey retained the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

---

ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

simple, unskilled work on a sustained basis in a competitive work environment where there is no more than occasional interaction with co-workers and the general public. R. 18. The ALJ determined that Robey could not return to her past relevant work as a short order cook, fork lift operator and receptionist (R. 26), but that Robey could work at jobs that exist in significant numbers in the national economy, such as cleaner, mail sorter and vehicle cleaner. R. 27. Thus, the ALJ concluded that Robey was not disabled. R. 28. On June 24, 2014, the Appeals Council denied Robey's request for review (R. 1–5), and this appeal followed.

## ANALYSIS

Robey has a history of depression, mood disorder, substance addiction disorder and post-traumatic stress disorder (PTSD). R. 19. Robey asserts that the ALJ made multiple errors in this case relating to those mental impairments, including failing to perform a function-by-function analysis of her impairments, failing to properly account for her moderate impairment with concentration, failing to properly analyze the listings, and failing to properly weigh the opinion of her treating physician.[3] Having reviewed the record, I find that the ALJ's decision is supported by substantial evidence.

**Function-by-Function Analysis**

Robey generally argues that the ALJ did not perform a function-by-function analysis prior to determining her RFC and thus, his decision did not properly consider the combination of her functional limitations. Robey specifically argues that the ALJ improperly generalized her anxiety and affective disorders under a broad severe impairment of anxiety and depression, without accounting for the unique limitations arising from each of her mental conditions. Pl. Br. Summ. J. p. 12. Robey points to medical records reflecting her panic attacks, general

---

[3] Robey's arguments relate only to her mental impairments and limitations; thus, I will not discuss her alleged physical impairments in this opinion.

nervousness, bipolar disorder and PTSD. Pl. Br. Summ. J. p. 12–13. Robey also argues that the ALJ did not specify which limitations arose from her severe substance abuse disorder. Pl. Br. Summ. J. p. 14.

The ALJ must include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. See SSR 96-8p, 1996 WL 374184 (SSA) (July 2, 1996). Specifically, the ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7. In the recent Fourth Circuit opinion Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p, and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to

guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a detailed summary of Robey's medical records, the medical opinions, Robey's hearing testimony and the ALJ's conclusions. R. 18–26. The ALJ did not err by generalizing Robey's mental impairments under the severe impairments of affective disorder, anxiety disorder and substance abuse disorder. The ALJ found Robey's mental impairments to be severe and analyzed them in detail in his RFC analysis. The ALJ spent nine pages discussing the evidence in the record that supports his findings on Robey's limitations. Id. The ALJ reviewed Robey's alleged symptoms in detail and explained why they lacked support in the record. R. 23–24. The ALJ considered the conflicting medical opinions in the record and provided an explanation as to why he gave great weight to some opinions and no weight to others. R. 25–26. Finally, the RFC delineates Robey's specific non-exertional limitations arising from her mental impairments. Thus, I find that the ALJ properly performed the required function-by-function analysis in this case.

**Listings 12.04, 12.06 and 12.09**

Robey also asserts that the ALJ erred by failing to discuss whether her mental limitations met the paragraph A criteria of Listing 12.04 or 12.06, and instead focused only on the paragraph B and C criteria. Pl. Br. Summ. J. p. 7–11. Robey asserts that the ALJ's failure to discuss the paragraph A criteria of those listings caused him to incorrectly analyze the extent of her anxiety and depression and improperly assess her credibility. Id. I find that the ALJ properly analyzed whether Robey's severe mental impairments met or medically equaled a listing.

A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "When satisfied, the listings of impairments automatically result in a finding of disability. The listings are designed to reflect

5

impairments that, for the most part, 'are permanent or expected to result in death.'" Casillas v. Astrue, 3:09–CV–00076, 2011 WL 450426, at *4 (W.D. Va. Feb. 3, 2011) (citing 20 C.F.R. § 404.1525(c)(4)).

To meet or equal a § 12.00 listing for a mental disorder, a claimant must satisfy criteria under both Paragraph "A" and "B" of the particular listing. Paragraph A delineates the required medical diagnosis or clinical evidence of a mental impairment. Paragraph B criteria for each § 12.00 listing requires a showing of at least two functional limitations, such as (1) marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or, (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P., App'x 1, §§ 12.04B, 12.06B, 12.08B & 12.10B. The Commissioner defines degrees of limitations under 20 C.F.R. §§ 404.1520a, 416.920a, rating limitations on a five point scale of "none, mild, moderate, marked, and extreme."

Here, the ALJ determined that Robey had the severe mental impairments of affective disorder, anxiety disorder and substance abuse addiction disorder. The ALJ reviewed whether those disorders met listings 12.04, 12.06 and 12.09, specifically discussing the "paragraph B" and "paragraph C" criteria of each.[4] The ALJ discussed the rating and degree of each functional limitation as required by the regulations and found that Robey did not have the required limitations to meet or equal the listings.

Robey argues that the ALJ erred because his listing analysis did not discuss the paragraph A criteria for each listing. Paragraph A sets forth the medically documented symptoms of each mental impairment necessary to meet the listing. Robey is correct that the ALJ did not discuss in

---

[4] The paragraph B criteria of Listings 12.04, 12.06 and 12.09 are identical, thus the ALJ discussed them in combination. R. 17–18. See 20 C.F.R. Pt. 404, Subpt. P., App'x 1, §§ 12.04B, 12.06B, 12.09.

his decision whether she met the paragraph A criteria for listings 12.04, 12.06 and 12.09. However, because the ALJ determined that Robey did not meet the requirements of paragraphs B or C for each listing, any error by the ALJ is harmless. See Nations v. Colvin, No. 1:14cv190-MOC, 2015 WL 1893655, at *6 (W.D.N.C. Apr. 27, 2015) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.")) Robey could not have been deemed disabled even if the criteria for paragraph A were met because the criteria for paragraphs B and C were not met.

Robey argues that by failing to specifically state which paragraph A criteria she met for each listing, the ALJ failed to properly consider the severity of her mental impairments and their impact on her functioning. However, the ALJ found that Robey's affective disorder, anxiety disorder and substance abuse disorders were severe impairments, and thus had more than a minimal impact on her ability to function. The ALJ analyzed and rated Robey's ability to function under the four broad functional areas set forth in paragraph B and C of the listings. After concluding that Robey's mental impairments did not meet a listing, the ALJ proceeded to analyze Robey's mental impairments in detail in step four of the analysis, including reviewing her medical records, reviewing and weighing all physicians' opinions in the record, and reviewing and assessing Robey's testimony and her credibility. Thus, to the extent the ALJ committed error by failing to address paragraph A of each listing, that error is harmless. See Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (A cursory explanation at step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion.) Ultimately, the role of this court is to examine the record to determine if substantial evidence supports the ALJ's

7

conclusion. I find, as set forth in more detail below, that the ALJ's decision as a whole demonstrates that he considered the relevant evidence of record and there is substantial evidence to support his conclusion.

**<u>Treating Physician Opinion</u>**

Robey also argues that the ALJ erred by rejecting the opinion of her treating nurse practitioner Folashade Odedina, DNP, that she was incapable of employment. Ms. Odedina treated Robey for her mental health issues approximately once every two months beginning in March 22, 2012. On January 13, 2014, Ms. Odedina provided a mental medical source statement noting clinical findings of depressed mood, crying spells, mood swings, hopelessness and helplessness feelings, and poor self image. R. 539. She listed Robey's prognosis as fair. Id. Ms. Odedina declined to assess Robey's mental abilities and aptitudes needed to do work, noting, "unable to assess-recommends having occupational assessment done from specialized individual." R. 541. Ms. Odedina noted that Robey would find many demands of work stressful, and would likely be absent from work more than four days per month. R. 543. She also noted that Robey's substance abuse contributes to her limitations by intensifying her poor judgment. R. 544. The ALJ gave Ms. Odedina's opinion little to no weight, finding it conclusory with little explanation as to the evidence relied upon, and unsupported by the record as a whole, including Ms. Odedina's own treatment notes. R. 26.

Robey disagrees with the ALJ's assessment of Ms. Odedina's opinion. Specifically, Robey argues that the ALJ improperly relied upon isolated instances of improvement in her medical records, rather than considering all of the evidence with regard to her mental illness. Pl. Br. Summ. J. p. 18. Robey also argues that the ALJ improperly substituted his own lay judgment for that of Ms. Odedina.

Substantial evidence supports the ALJ's decision to give Ms. Odedina's opinion little to no weight. As a nurse practitioner, Ms. Odedina is not an acceptable medical source as defined by the Act. 20 C.F.R. §§ 404.1513, 416.913 (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and—for limited purposes—licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). The opinions of non-acceptable medical sources are not entitled to any particular weight, and the ALJ is not required to explain the weight given to such opinions unless it might affect the case's outcome. See Adkins v. Colvin, No. 4:13-CV-00024, 2014 WL 3734331, at *3 (W.D. Va. July 28, 2014); see also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (finding no error in ALJ's failure to expressly weigh physical therapist's opinion). Nevertheless, the ALJ "has a duty to consider all of the evidence available in a claimant's case record, includ[ing] such evidence provided from 'other' nonmedical sources…" Ingle v. Astrue, 1:10CV141, 2011 WL 5328036, at *3 (W.D.N.C. Nov. 7, 2011) (citing Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939 (SSA)(Aug. 9, 2006); 20 CFR §§ 404.1513(d), 416.913(d)). Here, the ALJ considered Ms. Odedina's professional qualifications, the length and nature of her examining relationship with Robey, the weight of the evidence supporting her opinion, and her opinion's consistency with the other relevant evidence in the record. As the ALJ discussed, Ms. Odedina's opinion was conclusory and did not provide clinical evidence to support her conclusions or explain or substantiate her restrictive findings.[5] Further, Ms. Odedina declined to assess Robey's specific abilities to

---

[5] Ms. Odedina's opinion is essentially a checkbox form. Courts in the Fourth Circuit have recognized the limited probative value of such checkbox opinion forms. Leonard v. Astrue, No. 2:11cv00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician.")).

perform work tasks, indicating that she would not be a reliable source for that information. R. 541.

Additionally, as the ALJ noted, Ms. Odedina repeatedly documented that Robey had unremarkable mental status examination findings, including normal social interactions, fair to good concentration, and intact thought processes. R. 20–25, 291, 297, 309, 343, 353–54, 364–65, 368, 378, 495. Ms. Odedina's records also reflect that Robey's symptoms improved with psychotropic medications. R. 290, 296, 343, 364, 368, 378, 493, 525–26. Specifically, Robey reported that she was "doing well with current medications" (March 2012, R. 307), was pleased with the combination of her psychotropic medications (April 2012, R. 296), and had a significantly improved mood with medication adjustment (May 2012, R. 290). In January 2013, Robey reported that counseling and medication management had been helpful, she felt "markedly better" with her current medications and had better relationships. R. 283. Robey continued to report improvement in her condition and benefit from her medications during office visits from June 2012 through October 2013. R. 290, 349, 353, 360, 364, 368, 378, 493, 496, 501, 527, 536.

The ALJ also noted that Ms. Odedina's opinion was contradicted by the opinions of the state agency physicians. On September 20, 2012, state agency physician Jeanne Buyck, Ph.D. reviewed Robey's medical records and found that she had mild restrictions with activities of daily living, moderate difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence or pace. R. 59. She concluded that despite her limitations, Robey was capable of carrying out detailed instructions, performing activities within a schedule, maintaining regular attendance and being punctual. R. 61. She also found that Robey could sustain an ordinary routine without special supervision and make simple work-related decisions.

R. 61. Dr. Buyck concluded that Robey was capable of following 1–3 step directions, completing simple work tasks, completing an average work day, adjusting to ordinary changes, following work rules and maintaining safety. R. 62. Dr. Buyck also found that Robey would do best in environments with limited social demands. R. 61. On February 21, 2013, state agency physician Nancy Heiser, Ph.D., reviewed Robey's records and concurred with Dr. Buyck's findings. R. 78–81. The ALJ adopted the opinions of the state agency physicians that Robey was capable of performing simple work with 1–3 step instructions and limited social demands. R. 26. Thus, the ALJ's decision to give Ms. Odedina's opinion little weight is supported by substantial evidence in the record.

Robey also argues that if the ALJ disagreed with Ms. Odedina's opinion, he had a duty to recontact her to request additional information. Pl. Br. Summ. J. p. 19–20. This is incorrect. Social Security Ruling ("SSR") 96–5p states that "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." SSR 96–5p, 1996 WL 374183 (SSA) (July 2, 1996). Robey's argument attempts to expand this provision to require that an ALJ recontact a treating physician every time the ALJ finds insufficient evidence in the record to support that physician's conclusions. That is not the standard. The opinion of Ms. Odedina did not trigger the ALJ's duty to recontact because it did not contain a conflict or ambiguity that must be resolved, and the record was not inadequate to determine if Robey was disabled. See, e.g. Groseclose v. Comm'r, No. SAG–13–0200, 2013 WL 5487857, at *2 (D. Md. Sept. 27, 2013); Majica v. Astrue, No. 06–2900, 2007 WL 4443247, at *3 (E.D. Pa. Dec. 18, 2007). The ALJ noted no ambiguities or confusion regarding the content of Ms. Odedina's

opinion. Rather, he concluded that her conclusions were not supported by the objective medical evidence.

The ALJ carefully considered all of the evidence in the record, as is evident from his nine page recitation of the treatment records, Robey's testimony, and the opinion evidence. The ALJ gave great weight to the opinions of those physicians that he felt were supported by the record, and gave detailed reasons for his decisions to give little weight to Ms. Odedina's opinion. The ALJ followed the procedure dictated by the social security regulations and substantial evidence supports his decision

**Concentration, Persistence and Pace**

Robey also asserts that the ALJ did not properly account for her moderate impairment with concentration, persistence and pace, relying upon the Fourth Circuit's decision in Mascio v. Colvin, 780 F. 3d 632 (4th Cir. 2015). In Mascio, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638; see also Sexton v. Colvin, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing Wiederholt v. Barnhart, 121 Fed. App'x 833, 839 (10th Cir. 2005) (holding that a "limitation to simple, unskilled work does not necessarily" accommodate a person's difficulty in concentrating on or persisting in a task, or maintaining the pace required to complete a task). In Mascio, the Fourth Circuit found that the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC. The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect Mascio's ability to

work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638; see also Hutton v. Colvin, Civ. Action No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015).

Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. The ALJ has the responsibility to address the evidence of record that supports that conclusion.

Here, the ALJ found that Robey had moderate difficulties with concentration, persistence and pace. R. 17. However, the ALJ noted that Robey claimed to need special reminders to take care of personal needs and grooming, yet described her hobbies and interests as reading, dancing and watching TV. R. 17. Robey indicated that she could pay attention for about 10–20 minutes, and did not finish what she started, but could follow written and spoken instructions "good." R. 17. The ALJ also noted medical records that reflected that Robey denied any problems with concentrating, and describing Robey's attention as "fair-to-good." R. 20, 23.

The ALJ considered the opinion of Ms. Odedina, which is set forth in detail above, with clinical findings of depressed mood, crying spells, mood swings, hopelessness and helplessness feelings, and poor self image. R. 539. Ms. Odedina declined to assess Robey's mental abilities and aptitudes needed to do work, noting, "unable to assess-recommends having occupational assessment done from specialized individual." R. 541. Ms. Odedina noted that Robey would find many demands of work stressful, and would likely be absent from work more than four days per month. R. 543. She also noted that Robey's substance abuse contributes to her limitations by

13

intensifying her poor judgment. R. 544. Overall, Ms. Odedina's opinion did not address Robey's alleged problems with concentration, other than to check boxes indicating that Robey would find demands for speed, precision, complexity, making decisions, exercising independent judgment, working with other people regularly, remaining at work for a full day and fear of failure at work stressful. R. 543.

The ALJ also reviewed the state agency physicians' opinions that Robey had a moderate impairment with concentration, persistence and pace; however, she was capable of performing a range of work involving following 1–3 step instructions, completing simple work tasks, completing an average work day, adjusting to ordinary changes, following work rules, and maintaining safety, and would do best in environments with limited social demands. R. 26, 59–61, 78–81. Specifically, Drs. Buyck and Heiser concluded that despite her limitations, Robey was capable of carrying out simple and detailed instructions, performing activities within a schedule, maintaining regular attendance and being punctual. R. 61. They also found that Robey could sustain an ordinary routine without special supervision and make simple work-related decisions. R. 61. Drs. Buyck and Heiser concluded that Robey was capable of following 1–3 step directions, completing simple work tasks, completing an average work day, adjusting to ordinary changes, following work rules and maintaining safety, but would do best with limited social demands. R. 62. The ALJ gave these opinions great weight and incorporated their findings into the RFC by limiting Robey to simple, unskilled work on a sustained basis in a competitive work environment where there is no more than occasional interaction with co-workers and the general public. R. 18.

Thus, this is not a situation like Mascio, where the ALJ summarily concluded that a limitation of simple, unskilled work accounts for the claimant's moderate impairment in

concentration, persistence and pace with no further analysis or consideration. Rather, the medical evidence supports the conclusion that, despite her moderate limitation in concentration, persistence, or pace, Robey is capable of performing the basic mental demands of simple, unskilled work with occasional social interaction. This court is not "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637; see also Massey v. Colvin, No. 1:13cv965, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015).

**Credibility**

Robey also claims the ALJ erred when he failed to find her fully credible regarding the extent of her mental limitations. Robey argues that the ALJ did not provide sufficient explanation for how he determined which of her statements to discredit, took portions of the record out of context, and relied upon irrelevant factors. Specifically, Robey disagrees with the ALJ's consideration of medical records noting that her medications helped at times and records reflecting no complaints. Pl. Br. Summ. J. p. 22–23.

It is for the ALJ to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Robey's subjective allegations of pain and mental limitations are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Robey met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ then must evaluate the intensity and persistence of the claimed symptoms and their effect upon Robey's ability to work. Id. at 594–95. Here, the ALJ thoroughly identified the evidence forming the basis of his credibility determination and

explained his reasons for finding Robey's statements about the intensity, persistence, and limiting effects of her symptoms to be less than fully credible.

The ALJ determined that Robey's medically determinable impairments could reasonably be expected to cause her alleged symptoms. R. 19. However, the ALJ concluded that Robey was not entirely credible for multiple reasons. The ALJ found that Robey's alleged severity of her symptoms lacks support in the record, and reviewed in detail her claimed daily activities including caring for her grandson by cooking, washing his clothes and getting him ready for school; preparing complete and simple meals daily for one and a half to two hours at a time; cleaning house, cleaning laundry, ironing for one and a half to two hours at a time; shopping in stores monthly for over an hour; paying bills; counting change; handling a savings account; and using a checkbook. R. 23. The ALJ noted that despite her alleged problems getting along with others, Robey had never been fired or laid off due to problems getting along with people; rather, she reported that she left her last job to take care of her grandson. R. 25. Robey also claimed to need reminders to take care of her personal needs and grooming, but noted hobbies of reading and dancing, stated she could pay attention for ten to twenty minutes at a time, and could follow spoken and written instructions "good." R. 23.

The ALJ also noted Robey's inconsistent statements in the record with regard to getting along with her family, and her ability to use her right hand due to carpal tunnel syndrome and need for a brace. R. 24. The ALJ noted that Robey's records reflected that her conditions were generally alleviated with medication and that on several occasions she did not specify any complaints to her physicians. The ALJ considered Robey's recent history of illegal drug use, and found that it "lessened the persuasiveness of her assertion that she is incapable of working solely due to her conditions." R. 24. The records reflect that Robey was smoking marijuana

16

during her alleged period of disability. R. 25. The ALJ thoroughly explained the reasoning behind his credibility determination, and substantial evidence supports his conclusions on this point.

Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala. No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir.1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). It is part of the ALJ's prerogative as a fact finder to consider the evidence as a whole in determining a claimant's credibility. Where, as here, the ALJ's credibility determination is supported by substantial evidence, it should not be disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658–59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589). Accordingly, I decline to do so here.[6]

---

[6] Robey also argues that the ALJ failed to appropriately weigh the testimony of her friend Curtis Revell, who testified at the administrative hearing. Pl. Br. Summ. J. p. 4. The ALJ recounted Mr. Revell's testimony in his decision and considered his statement that he ended his relationship with Robey because he "couldn't take what she was going through," and he was "scared" for himself and was "being brought down" by Robey. R. 19. Contrary to Robey's assertion, the regulations do not require the ALJ to assign a specific weight to Mr. Revell's testimony. See 20 C.F.R. § 404.1513(d)(4) ("In addition to evidence from acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources….for example, spouses, parents and other caregivers…"). Additionally, the United States Court of Appeals for the Fourth Circuit has held that it is unnecessary to discuss the testimony of lay witnesses where it is inconsistent with other evidence in the record. See Laws v. Celebrezze, 368 F.2d 640, 644 (4th Cir. 1966). Here, the ALJ properly considered the evidence in the record, including Mr. Revell's testimony, and provided a sufficient explanation for the RFC. The ALJ did not err by failing to expressly weigh Mr. Revell's testimony when explaining his disability determination.

## **CONCLUSION**

For the foregoing reasons, I find that substantial evidence supports the Commissioner's decision. Accordingly, I **GRANT** summary judgment to the defendant and **DISMISS** this case from the court's docket.

Enter: March 16, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge